UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JACOB HAWK WING,<br><br>Defendant. | 3:20-CR-30098-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION FOR REDUCTION IN SENTENCE |

On October 5, 2021, this Court sentenced Defendant Jacob Hawk Wing to 60 months of imprisonment for robbery followed by three years of supervised release. Doc. 51. At the time of the sentencing, Hawk Wing was in Criminal History Category V with a guideline range of 70 to 87 months. The retroactive change to § 4A1.1(e) of the United States Sentencing Commission's Guidelines Manual has the effect of placing Hawk Wing in Criminal History Category IV, where his guideline range would have been 57 to 71 months.

Hawk Wing filed a Motion for Reduction in Sentence, Doc. 53, and the Federal Public Defender for North and South Dakota filed a supplement proposing a reduction to a 57-month sentence. The United States does not contest Hawk Wing's eligibility to be considered for a sentence reduction but opposes the proposed reduction in Hawk Wing's sentence, Doc. 56, principally because of his in-custody disciplinary history. This Court exercises its independent judgment on whether to grant a sentence reduction and the extent of any such reduction.

In <u>Dillon v. United States</u>, 560 U.S. 817 (2010), the Supreme Court of the United States addressed the process for applying a retroactive guideline amendment, emphasizing that U.S.S.G.

1

§ 1B1.10 is binding. The Supreme Court required any "reduction [to] be consistent with applicable policy statements issued by the Sentencing Commission" and directed district courts to follow a two-step approach. Id. at 821. In the first step, a court must determine the inmate's eligibility for a modification and then determine the amended guidelines range. Id. At step two, § 3582(c)(2) instructs courts to consider applicable 18 U.S.C. § 3553 factors to determine whether the authorized reduction is warranted in whole or in part under the specific circumstances of the case. Id. at 827. The Supreme Court also observed:

> Consistent with the limited nature of § 3582(c)(2) proceedings, § 1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution.

Id. at 821 (quoting U.S.S.G. § 1B1.10(b)(2)(A)).

In Part A to Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in Section 4A1.1(e). The amended provision states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Thus, a person who otherwise has 7 criminal history points or more now receives 1 additional "status" criminal history point, instead of 2, while one who otherwise has 6 criminal history points or fewer receives no status points.

On August 24, 2023, the Commission decided that this change applies retroactively. The Commission further directed that a court granting relief may not order the release of a defendant to occur any earlier than February 1, 2024. See § 1B1.10(e)(2) (Nov. 1, 2023).

Consistent with the amended U.S.S.G. § 4A1.1(e) and the rules set forth in Dillon, Hawk Wing meets the criteria for such a reduction. Under Part A of Amendment 821 to the Sentencing Guidelines, reduction of one status point for Hawk Wing puts him into Criminal History Category IV rather than V. With his total offense level remaining at 21, his guideline range drops to 57 to 71 months. See U.S.S.G., Ch. 5, Pt. A (Sentencing Table).

Turning to step two, § 1B1.10 directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. 1B1.10, cmt. n.1(B)(i). "The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. United States v. Vautier, 144 F.3d 756, 760 (11th Cir. 1998). Under the "Background" to U.S.S.G. § 1B1.10, "[t]he authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right." In the context of First Step Act reductions, the Eighth Circuit has ruled that "[o]nce a district court determines that a defendant is eligible for a sentence reduction, it has 'substantial discretion' to choose whether to reduce the sentence." United States v. Burnell, 2 F.4th 790, 792 (8th Cir. 2021) (citing United States v. Hoskins, 973 F.3d 918, 921 (8th Cir. 2020)); see United States v. Young, 555 F.3d 611, 614 (7th Cir. 2009).

Subject to the limits set forth in § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. Dillion, 560 U.S. at 821–22. Section 3553(a), in addition to requiring consideration of the applicable guidelines and policy statements of the Sentencing Commission, mandates the sentencing judge to consider:

3

    (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2) the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

    (3) the kinds of sentences available;

18 U.S.C. § 3553(a).

The nature and circumstances of Hawk Wing's offense were very serious and justify a significant sentence. On July 26, 2020, just 16 days after getting out on federal supervised release following serving a sentence for possession of a stolen firearm, Hawk Wing robbed the store clerk at the Crow Creek Convenience Store on the Crow Creek Indian Reservation. Hawk Wing brandished a pellet gun that resembled an AR-14 and pointed the gun at the store clerk. Hawk Wing made the store clerk, who was eight months pregnant at the time, get down on the ground and kicked her, saying, "bitch, you want to die?" Hawk Wing left the store with about $1,580 and two bottles of alcohol. Outside the store, bystanders stopped Hawk Wing, beat him up and held him down until he was arrested. The store clerk knew and recognized Hawk Wing, noting that he appeared beaten up even before he robbed her, and Hawk Wing gave a story that others forced him to rob the store. The store clerk was sufficiently traumatized that she quit the job due to the robbery. Hawk Wing was intoxicated at the time he committed the robbery.

The history and circumstances of Hawk Wing's life are sad. Hawk Wing's father died of cirrhosis when Hawk Wing was a child. Hawk Wing's mother likewise struggled with alcohol abuse, so an uncle raised Hawk Wing. Hawk Wing began abusing alcohol at age 13 and dropped out of school in 9th grade due to his alcohol issues. Hawk Wing has psychological issues including PTSD, adjustment disorder and major depressive disorder. He has been in and out of custody on

4

state, tribal and federal offenses for much of his adult life. Hawk Wing has a very limited employment history and appears to have done very little with his life to this point.

The remaining factors of seriousness of the offense, promotion of respect for the law, just punishment, adequate deterrence, and protection of the public justify, at most, a very limited reduction from the prior sentence. The Eighth Circuit has recognized that in the context of evaluating a sentence reduction, a judge may consider post-conviction developments. See United States v. Darden, 910 F.3d 1064, 1067 (8th Cir. 2018) (opining "nothing prohibits a court from considering new facts that it had no opportunity to address the first time around"). Similarly, application note 1(B)(iii) to § 1B1.10 also directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after imposition of the [original] term of imprisonment." U.S.S.G. 1B1.10, cmt. n.1(B)(iii). The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in § 1B1.10(b).

Some courts in the Eighth Circuit have denied sentence reductions because of a defendant's disciplinary problems. See, e.g., United States v. Boyd, 835 F.3d 791, 792 (8th Cir. 2016) (affirming denial of sentence reduction where district court had cited defendant's "extensive criminal history and record of misconduct while incarcerated, which included over thirty disciplinary violations" and had "[e]mphasiz[ed] the nature and seriousness of the danger to a person or the community that may be posed by a reduction in [defendant's] term of imprisonment"); see also United States v. Harris, No. 20-3264, 2021 WL 5272693, at *2 (8th Cir. Nov. 12, 2021) (unpublished) (affirming denial of motion upon review of details of defendant's conduct, including disciplinary data); United States v. Tofiga, 807 F. App'x 597, 598 (8th Cir. 2020) (unpublished) (affirming district court grant of motion and sentence reduction to middle of

new guidelines range, based in part on disciplinary infractions while incarcerated); United States v. Rivera-Moreno, 692 F. App'x 305, 307 (8th Cir. 2017) (unpublished) (affirming denial of reduction for inmate who, though eligible for sentence reduction, had "five disciplinary reports while incarcerated, including destroying property, refusing to obey an order, and assault without serious injury").

Hawk Wing's prison records show some disciplinary problems. Doc. 55. On January 17, 2024, Hawk Wing received a sanction for refusing a work/program assignment and for refusing to obey an order. Id. at 1. In August of 2022, he received a sanction for being in a fight, and in July 2020, he was sanctioned for disruptive conduct–greatest incident. Id. at 1–2. As a result, Hawk Wing lost some good time credit as well as phone time and other privileges. Id. at 1. On the other hand, Hawk Wing is enrolled in GED classes and completed some coursework. Doc. 53-1. Hawk Wing's sporadic disciplinary issues militate against a sentence reduction, but those incidents of misbehavior appear to be isolated with appropriate penalty administratively. They do not debar Hawk Wing from being considered for a sentence reduction.

Accepting that retroactive application of the recent guidelines changes places Hawk Wing in Criminal History Category IV with a guidelines range of 57 to 71 months, this Court notes that the sentence the Federal Public Defender and United States Attorney recommend is the bottom end of that guideline range—57 months. Ruling on these sorts of motions analytically requires a sentencing court to evaluate what the court would have done if it had calculated a lower guideline range to apply at the time of sentencing. Here, this Court considers a 58-month sentence to be sufficient but not more than necessary under the § 3553(a) factors. Therefore, it is

ORDERED that Hawk Wing's Motion for Reduction in Sentence, Doc. 53, is granted to the extent that the sentence is lowered from 60 months to 58 months of incarceration. It is further

ORDERED that the Probation and Pretrial Services Office prepare an Amended Judgment in a Criminal Case reflecting sentence reduction from 60 to 58 months but making no other changes to the terms of the prior Judgment in a Criminal Case.

DATED this ___28ᵗʰ___ day of June, 2024.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

7